UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENRIQUE MAYA, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>FORTY NINERS FOOTBALL COMPANY LLC, et al.,<br><br>       Defendants. | Case No.  24-cv-02585-PCP<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 9 |

Plaintiffs Enrique Maya and Rick Maya bring this disability discrimination action against defendants Forty Niners Stadium Management Co (hereafter, "Niners Management"), Forty Niners, Football Co. (hereafter, "49ers LLC"), Forty Niners SC Stadium Co. (hereafter, "Stadium Company"), Landmark Event Staffing Services, Inc. (hereafter, "Landmark"), and Allied Universal Security Services Universal Protection Service LLP (hereafter, "Allied"). Plaintiffs allege that defendants, who own and operate Levi's Stadium, discriminated against them by denying Enrique Maya wheelchair seating at a 49ers football game at Levi's Stadium and threatening ejection or arrest due to Rick Maya's advocacy on behalf of his father, both allegedly in violation of federal and state law.

Three defendants–Niners Management, 49ers LLC, and Stadium Company—move to dismiss plaintiffs' claims under Rule 12(b)(6), contending that their complaint fails to state any valid causes of action. Plaintiffs move to strike several statements in defendants' motion. For the following reasons, the Court denies defendants' motion to dismiss and denies plaintiffs' motion to strike.

# BACKGROUND[1]

Enrique Maya is a 78-year-old "individual with a childhood diagnosis of polio," which has left him reliant on a wheelchair "whenever he needs to take more than a few steps." Compl., Dkt. No. 1 ¶¶ 3, 14. The complaint alleges that this classifies him as a "person with a disability as defined by state and federal law." *Id.* Rick Maya is Enrique Maya's adult son. *Id.* ¶ 4. 49ers LLC owns and operates the San Francisco Forty Niners football team, which plays at Levi's Stadium in Santa Clara, California. *Id.* ¶ 5. Niners Management operates and manages Levi's Stadium. *Id.* Stadium Company leases portions of Levi's Stadium from the Santa Clara Stadium Authority and then subleases these areas to 49ers LLC. *Id.* Landmark and Allied are contracted to provide security at Levi's Stadium. *Id.*

On December 10, 2023, Rick Maya took his two sons and father to a Forty Niners football game at Levi's Stadium. Compl. ¶ 9. Enrique Maya's attendance was not planned when the tickets were bought. Rick Maya invited his father to attend at the "last minute" because Rick Maya's wife was unable to attend. *Id.* Plaintiffs allege that "[a]ble bodied guests can make a last-minute decision to accept the gift of a ticket to Levi's Stadium." *Id.* ¶ 33. The family's ticketed seats were located seven steps from the concourse level, which Enrique Maya could not access because of his inability to navigate the stairs. *Id.* ¶ 10. Because of this, Rick Maya pushed his father's wheelchair into an unoccupied wheelchair-designated seat on the concourse level for which the Mayas did not have a ticket. *Id.* ¶ 11.

An usher at the stadium informed the Maya family that they could not use the wheelchair space without a ticket. Compl. ¶ 11. Rick Maya proceeded to ask "for another wheelchair seat option." *Id.* In response to Rick Maya's requests, the usher stated that "she did not know where Enrique could sit, but he couldn't use the wheelchair spaces." *Id.* The usher then proceeded to call security staff. *Id.*

Sean, one of the two security staff who responded to the dispute, said Enrique Maya could

---

[1] For purposes of defendants' Rule 12(b)(6) motion, the Court assumes the truth of the allegations in plaintiffs' complaint.

watch the game on a television in the concourse, but would not be allowed to use the wheelchair space without a ticket. Compl. ¶¶ 12–14. Rick Maya informed security that the concourse was not an acceptable alternative, as it was "busy and boisterous," and "in the path of foot traffic" adjacent to the men's restroom and a beer stand. *Id.* at 14. Sean insisted that they needed tickets for the wheelchair space and "gave them no other option." *Id.* at 13–14. He instead threatened to remove the family from the stadium if they did not move. *Id.* "Shortly, three uniformed Santa Clara City police officers arrived and stood near Plaintiffs and Sean, watching the conversation between them." *Id.* "After the offices arrived," Sean told Rick Maya that "he and his family would be ejected from the stadium" if Rick Maya "did not stop complaining." *Id.* The Mayas "understood the police presence as a threat of force and/or arrest if Rick continued to advocate for his father to have equal seating," and at that point "chose to stop advocating and use the inaccessible seats" because Enrique Maya "did not want his grandsons to miss the game." *Id.* ¶¶ 15–16.

Enrique Maya's son and two grandchildren carried him down to their seats, an experience that left Enquire Maya feeling "embarrassed," "ashamed," and "uncomfortable," as "his disability was being graphically demonstrated." Compl. ¶ 16. Unable to bring himself to ask to be taken to the restroom after the experiences that occurred prior, Enrique Maya urinated on himself in his seat. *Id.* ¶ 19. This experience at Levi's Stadium left Enrique Maya feeling humiliated and made him feel "exposed and unwanted as a person with a disability." *Id.* ¶¶ 19–20.

Rick Maya's enjoyment of the game was also affected by the need to routinely check on the wheelchair, which stadium staff placed out of sight. Compl. ¶ 21. At halftime and again towards the end of the game, Rick Maya asked the ushers whether his father could move to one of the empty wheel-chair spaces, promising that he would not occupy a companion seat himself. Each time, the ushers responded no. *Id.* These wheelchair spaces remained unoccupied throughout the entire game. *Id.*

After the game ended, Rick Maya called the 49ers' customer service line to report the experience and "requested that the 49ers follow the Americans with Disabilities Act." Compl. ¶ 23. The supervisor, however, "would not promise that his father would be allowed a wheelchair seat if the ticket was not originally purchased as a wheelchair seat." *Id.* The supervisor provided

3

the Mayas with no other options and told Rick Maya, "We follow the rules of the NFL." *Id.*

Enrique Maya claims he is "deterred from accepting invitations to attend major sporting events, and has already denied offers to watch an SF Giants game and his grandson's college baseball games," as a result of defendants' conduct. Compl. ¶¶ 24–25. Rick Maya is similarly deterred from inviting his father to sporting events due to defendants' conduct. *Id.* ¶ 26. They allege that they "desire to return to Levi's stadium together but are deterred from doing so" until defendants' discriminatory policies, practices, and procedures end. *Id.* ¶¶ 37, 43.

Enrique Maya and Rick Maya assert six total causes of action against all defendants for: (1) violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12182(a), (b)(1)(E); (2) retaliation and interference in violation of the ADA, 42 U.S.C. § 12203; (3) violation of the Disabled Persons Act ("DPA"), Cal. Civ. Code §§ 54.1(a)(1), (d); (4) retaliation and interference in violation of the DPA, Cal. Civ. Code § 54.1(d); (5) violations of the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51; and (6) retaliation and interference in violation of the Unruh Act, Cal. Civ. Code §§ 51(f), 52(c). The Mayas seek injunctive relief under the Americans with Disabilities Act and seek damages under the DPA and Unruh Act.

On June 12, 2024, 49ers LLC, Niners Management, and Stadium Company moved to dismiss the complaint for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6).

**LEGAL STANDARD**

A complaint that does not state a plausible claim upon which relief can be granted can be dismissed under Federal Rule of Civil Procedure 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions "can provide the framework of a complaint" but "must be supported by factual allegations." *Id.* at 679. The Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009).

# ANALYSIS

## I. Defendants' requests for judicial notice are granted.

In support of their motion, defendants have requested judicial notice of Levi Stadium's ticket policy, accessible seating policy, and code of conduct, all of which are available on Levi's Stadium's website. Plaintiffs argue that the Court should deny the requests because the complaint does not expressly refer to these documents, does not assert that defendants have any written policies, and argue that Levi's Stadium's policies are not essential to plaintiffs' claims. *See* Dkt. No. 16, at 8–9. The Court grants defendants' requests and takes judicial notice of the June 3, 2024 version of Levi's Stadium's ticket information webpage, June 11, 2024 version of Levi's Stadium's accessible services webpage, and June 3, 2024 version of Levi's Stadium's security policy webpage. *See* Fed. R. Evid. 201(b). While the Court takes judicial notice of the existence and contents of the documents at issue as of these respective dates, it will not take judicial notice of the underlying truth of any factual assertions therein. Additionally, the Court will not draw any conclusions or inferences therefrom, including that these were the versions in effect during the period relevant to plaintiffs' claims or that defendants followed or complied with their policies at the time of the events at issue here.

## II. Defendants' motion to dismiss is denied.

### A. Plaintiffs adequately state claims for discriminatory policies and practices under the ADA, the DPA, and the Unruh Act.

Title III of the ADA prohibits discrimination on the basis of disability by places of accommodation. 42 U.S.C. § 12182(a) provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." To state a claim under Title III, a plaintiff must establish that: (1) he "is disabled within the meaning of the ADA;" (2) "the defendant is a private entity that owns, leases, or operates a place of public accommodation;" and (3) he "was denied public accommodations by the defendant because of h[is] disability." *Molski v.*

*M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007) (citing 42 U.S.C. §§ 12182(a)-(b)).[2] Additionally, the ADA requires public entities to affirmatively modify policies, practices, and procedures "when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182 (b)(2)(A)(ii). A violation of the ADA is a per se violation of the Unruh Act and the DPA. *See* Cal Civ. Code §§ 51(f) (Unruh Act), 54(c) (DPA), 54.1(d) (DPA).

For purposes of this motion, it is uncontested both that Enrique Maya has physical limitations that qualify him as a person with a disability under the ADA and that defendants are private entities subject to the requirements of Title III of the ADA. Defendants instead dispute that plaintiffs have alleged discrimination under the ADA.

Plaintiffs plausibly state a claim for discrimination under two theories.

First, plaintiffs allege that defendants have a policy, practice, or procedure of requiring wheelchair-bound spectators to buy wheelchair seat tickets in advance if they wish to have a viewing experience comparable to that of other spectators. By contrast, plaintiffs plead, non-disabled participants "can make a last minute decision to accept the gift of a ticket to Levi's Stadium." Compl. ¶ 33. In this way, plaintiffs allege, defendants deny disabled individuals "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of Levi's Stadium. These facts plausibly allege disability-based discrimination under 42 U.S.C. § 12182(b)(1)(E), because they suggest that defendants' policies and practices require only disabled individuals to pre-purchase tickets.[3]

---

[2] 42 U.S.C. § 12182(b)(1)(E) provides, "It shall be discriminatory to exclude or otherwise deny equal goods, services, facilities, privileges, advantages, accommodations, or other opportunities to an individual or entity because of the known disability of an individual with whom the individual or entity is known to have a relationship or association." Defendants do not challenge Rick Maya's statutory standing to sue by association.

[3] Defendants argue that their current pre-purchase policy was written in connection with a settlement agreement reached in a prior ADA lawsuit. *See Nevarez v. Forty Niners Football Co., LLC*, N.D. Cal. Case No. 5:16-cv-07013-HSG. The fact that a prior policy violated the ADA does not, however, mean that all aspects of the revised policy are compliant with the ADA.

6

Defendants contend that plaintiffs do not state a claim for general discrimination under the ADA because "ADA regulations regarding ticketing and seating are robust and nowhere do they include a requirement that a venue must permit a non-ticketed person with a disability to occupy an accessible ticketed location on demand." Dkt. No. 9, at 12. While ADA regulations do contain specific provisions addressing ticketing and seating, *see* 28 C.F.R. § 36.302(f), compliance with those regulations—even assuming that defendants did so—does not otherwise absolve defendants of their obligations under the ADA. Here, plaintiffs have plausibly alleged that defendant's policy and practice deny disabled individuals "full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of Levi's Stadium by conditioning the accommodation of their disability on the unique requirement to pre-purchase tickets, and this is true notwithstanding defendants' purported compliance with ADA's specific regulations regarding ticketing and accessible seating.[4]

Second, plaintiffs plausibly plead that defendants violated the ADA by failing to make reasonable modifications to their policies, practices, and procedures. A plaintiff may state a claim of disability discrimination by establishing that the defendant "(a) fail[ed] to make a requested reasonable modification that was (b) necessary to accommodate the plaintiff's disability." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1082 (9th Cir. 2004). The complaint alleges that Rick Maya made repeated requests for modifications on behalf of his father so that his father could enjoy equal access to the game. For example, Rick Maya asked the usher "if his father could sit in one of the empty wheelchair spaces," Compl. ¶ 11, 13. Rick Maya then "asked for another wheelchair seat option for his father." *Id.* Plaintiffs plead that the only alternative defendants suggested at that time was that Enrique Maya could watch the game from a television in the concourse. When Rick Maya informed defendants that the suggested modification was not reasonable, defendants provided "no other option." *Id.* ¶ 14. During halftime and towards the end of the game, Rick Maya again sought reasonable modifications suggesting that this could be

---

[4] Whether defendants' policies and practices in fact comply with these specific regulations and their relevance to plaintiffs' allegations are factual matters not appropriate for resolution at this stage.

7

accomplished by defendants allowing Enrique Maya to occupy one of still unoccupied wheelchair seats even without Rick Maya occupying a companion seat. *Id.* ¶ 21. Plaintiffs also allege that when Rick Maya called defendants' customer service line to inquire about modifications under the ADA, defendants again offered no alternatives and indicated they could not commit to reasonably modifying their policies and practices in the future. *See id.* ¶¶ 23, 61 Taken together, these facts plausibly allege that defendants discriminated against plaintiffs by failing to reasonably modify policies, practices, and procedures as necessary to accommodate Enrique Maya's disability.

Defendants argue that plaintiffs' proposed modifications are unworkable and that the ADA does not require them to permit a spectator to occupy a seat for which they did not purchase a ticket.[5] Contrary to the defendants' assertion, however, plaintiffs do not at this stage request that defendants implement a specific modification—they simply assert that defendants should have provided them with a reasonable modification in compliance with the ADA's mandate.[6] Whether or not defendants were required to permit the Mayas to use the empty wheelchair seats the Mayas had identified, the ADA required them to offer Enrique Maya *some* reasonable accommodation to account for his wheelchair-bound status. Plaintiffs allege that defendants never did so.

For these reasons, plaintiffs have adequately pleaded a disability discrimination claim under the ADA. And because plaintiffs have adequately pleaded a predicate ADA violation, they have also adequately pleaded violations of the Unruh Act and the DPA. *See* Cal Civ. Code §§ 51(f) (Unruh Act), 54(c) (DPA), 54.1(d) (DPA).

---

[5] Defendants additionally contend that the ADA *required* them to keep the wheelchair seats where the Mayas initially sat empty and available for the individuals who had purchased them for the game.

[6] Whether a modification is "reasonable" is a fact-intensive inquiry premature for resolution on a motion to dismiss. *See Fortyune*, 364 F.3d at 1083 ("Although neither the ADA nor the courts have defined the precise contours of the test for reasonableness, it is clear that the determination of whether a particular modification is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it.") (citation omitted); *Wong v. Regents of the Univ. of Cal.*, 192 F.3d 807, 818 (9th Cir. 1999) ("[T]he issue of reasonableness depends on the individual circumstances of each case, this determination requires a fact-specific, individualized analysis of the disabled individual's circumstances and the accommodations that might be necessary to ensure his ability to enjoy a public accommodation" (cleaned up)).

### B. Plaintiffs adequately state claims for retaliation and interference under the ADA, DPA, and the Unruh Act.

Under the ADA, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter." 42 U.S.C. § 12203(b). To state a prima facie claim for retaliation under the ADA, the plaintiff must demonstrate: (1) "involvement in a protected activity," (2) an adverse action, and (3) "a causal link between the two." *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003).

Asserting one's rights under the ADA can constitute a protected activity. *See McAlindin v. Cnty. of San Diego*, 192 F.3d 1226, 1238 (9th Cir. 1999), *opinion amended on denial of reh'g*, 201 F.3d 1211 (9th Cir. 2000). Here, plaintiffs allege that defendants took adverse action in the form of a threat of ejection in the presence of police officers in response to Rick Maya's assertion of his father's rights under the ADA. In response to Rick Maya asking the usher for an alternative wheelchair seat option after the usher notified them that Enrique Maya could not occupy the empty wheelchair seat, the usher "got on her radio, and in a few minutes two security staff arrived." Compl. ¶ 11. The complaint alleges that "[a]fter the officers arrived" and Rick Maya again sought alternative accessible options for his father, one of the security staff responded by saying that "if he did not stop *complaining*, he and his family would be ejected from the stadium." *Id.* ¶ 14 (emphasis added). This conduct by defendants was effective in terminating the family's efforts to procure an accommodation of Enrique Maya's disability, as they thereafter went to their assigned seats (despite the significant difficulties they encountered moving Enrique Maya there) and remained there even after Enrique Maya needed to use the restroom.

The facts are sufficient for the Court to plausibly infer at this stage that defendants' threat of ejection was a response to, and interfered with, their assertion of their rights under the ADA. Of course, to succeed on the merits of this claim, plaintiffs will need to *prove* that defendants' action was a direct response to their assertion of rights and not simply to their insistence on occupying seats for which they did not have tickets, or refusal to vacate those seats, while the possibility of an alternative accommodation was being explored.

9

Defendants contend that they threatened ejection for non-discriminatory reasons—here, because plaintiffs failed to vacate seats for which they did not have tickets. To be certain, if defendants offered the Mayas a reasonable alternative accommodation and threatened ejection only in response to the family's failure to vacate seats for which they did not occupy tickets, plaintiffs could not succeed on their claim for retaliation or interference under the ADA. Whether that is the case here, however, is a factual matter that cannot be resolved on this Rule 12(b)(6) motion.

For these reasons, plaintiffs have adequately pleaded a retaliation or interference claim under the ADA. And because plaintiffs have adequately pleaded a predicate ADA violation, they have also adequately pleaded violations under the Unruh Act and the DPA. *See* Cal Civ. Code §§ 51(f) (Unruh Act), 54(c) (DPA), 54.1(d) (DPA).

### III. Plaintiffs' motion to strike is denied.

Plaintiffs seek to strike several statements in defendants' motion on grounds that the statements are false or misleading, misstate paragraphs of the complaint, state assumptions as opposed to facts, are unsupported by the complaint, and make assertions that are not part of the record. The challenged statements include, for example, facts regarding the 49ers's success as a franchise and against whom the relevant game was played, that the game was "sold out in advance," that "Levi's Stadium has a policy by which tickets for non-accessible locations can be exchanged for tickets for accessible locations," and that "the accessible seats for this game were sold to disabled persons." Dkt. No. 16, at 6–10.

Contrary to plaintiffs' argument, many of the challenged factual statements involve matters of the public record for which the Court may take judicial notice. Fed. R. Evid. 201(b). The remaining statements are conclusions of law that the Court can and must independently review or facts upon which the Court has not relied in resolving defendants' motion. For these reasons, plaintiffs' motion to strike is denied.

### CONCLUSION

For the foregoing reason, defendants' motion to dismiss is denied and plaintiffs' motion to strike is denied.

**IT IS SO ORDERED.**

Dated: September 10, 2024

_____
P. Casey Pitts
United States District Judge